UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 11-10177 |
| | ) | Chapter 7 |
| MARCUS EDWARD JUNDT | ) | |
| SSN/ITIN xxx-xx-8331 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| FORREST C. ALLRED, TRUSTEE | ) | Adv. No. 13-1011 |
| | ) | |
| Plaintiff | ) | |
| -vs- | ) | |
| | ) | |
| JONATHAN BROOKS HAUSER, | ) | |
| as Trustee of the Children's Educational Trust; | ) | |
| BBS CAPITAL FUND LP; | ) | |
| PERCEPTIVE SOFTWARE, LLC, | ) | DECISION RE:  DEFENDANTS' |
| as the successor in interest to | ) | MOTIONS TO DISMISS |
| Acuo Technologies, LLC; | ) | AMENDED COMPLAINT |
| HAUSER HOLDINGS, LLC, | ) | |
| a Minnesota Limited Liability Company; | ) | |
| MARY JANE HAUSER; | ) | |
| and LAND INVESTMENTS LLC, | ) | |
| a Minnesota Limited Liability Company | ) | |
| | ) | |
| Defendants. | ) | |

The matters before the Court are Defendants BBS Capital Fund LP and Perceptive Software, LLC's Motion to Dismiss Amended Adversary Complaint and Defendants Jonathan Brooks Hauser, as trustee of the Children's Educational Trust, Hauser Holdings, LLC, Mary Jane Hauser, and Land Investments, LLC's Motion to Dismiss Amended Adversary Complaint.  The Court enters these findings and conclusions pursuant to Fed.R.Bankr.P. 7052.  For the reasons discussed below, the Court will grant the motions, without prejudice.

I.

Marcus Edward Jundt ("Debtor") filed a chapter 7 petition in bankruptcy on August 26, 2011.  Forrest C. Allred, the case trustee, commenced this adversary proceeding against several defendants, whom, excluding Defendant Perceptive Software, LLC ("Perceptive Software"), the trustee describes as Debtor's friends and business associates or business entities of Debtor's friends and business associates.  Trustee Allred wants to recover from the defendants the value of a business interest the defendants allegedly received from Debtor through actual fraud, constructive fraud, or a preferential transfer.  He also wants the Court to avoid a secured interest claimed by some defendants.

Defendants BBS Capital Fund LP ("BBS Capital") and Perceptive Software have asked the Court to dismiss counts four and five of Trustee Allred's amended complaint (doc. 49) under Fed.Rs.Civ.P. 9(b) and 12(b)(6) and (7)[1] (doc. 54).  Defendant Jonathan Brooks Hauser, the trustee for Children's Educational Trust ("Educational Trust"), has asked the Court to dismiss counts one through five of Trustee Allred's amended complaint under Fed.Rs.Civ.P. 9 and 12(b)(6) (doc. 56).  Defendants Hauser Holdings, LLC, Mary Jane Hauser, and Land Investments, LLC have asked the Court to dismiss count six, citing S.D.C.L. § 57A-9-617 (doc. 56).  Defendants Jonathan Brooks Hauser, Hauser Holdings, LLC, Mary Jane Hauser, and Land Investments, LLC also raised some related legal issues (doc. 56).

 For the purpose of resolving the motions to dismiss under Rule 12(b) at this

---

[1]For adversary proceedings, Fed.R.Bankr.P. 7009 incorporates Fed.R.Civ.P. 9, and Fed.R.Bankr.P. 7012(b) incorporates Fed.R.Civ.P. 12(b)-(i).

early stage of the proceeding, the Court accepts Trustee Allred's factual allegations in his amended complaint as true, construing all reasonable inferences in his favor. *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *Ashley v. United States Dept. of Interior*, 408 F.3d 997, 999-1000 (8th Cir. 2005).  Further, the Court "may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record."  *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002)).  Accordingly, the facts below are gleaned from Trustee Allred's amended complaint (doc. 49) and the record in this adversary proceeding and Debtor's attendant bankruptcy case, Bankr. No. 11-10177.

In 2007 and 2008, Debtor borrowed a total of $1,000,000.00 from Home Federal Savings Bank of Edina, Minnesota ("Home Federal").  Debtor pledged 100,000 shares of Kona Grill, Inc. as collateral.  Debtor, his father James Jundt, Richard Hauser, and Berke Bakay served on the board for Kona Grill, Inc., a publicly traded entity.  The men had other business dealings with one another as well.

In 2007 and 2008, Debtor borrowed a total of $1,650,000.00 from Crown Bank of Edina, Minnesota ("Crown Bank") under three separate notes.  With each note,  Debtor gave Crown Bank a security interest in his membership units in Acuo Technologies, LLC ("Acuo Tech"), a Minnesota entity formerly controlled and managed by James Jundt.  Debtor consolidated his three notes at Crown Bank on April 29, 2009.  The new principal balance was $1,295,551.19.  Crown Bank filed financing statements regarding its collateral in both South Dakota and Minnesota.

Debtor borrowed $7,150,000.00 from Prosperan Bank of Oakdale, Minnesota ("Prosperan Bank") in 2008. The loan was restated and amended over time. At some point, Debtor pledged his units in Acuo Tech to secure his loan with Prosperan Bank, and a financing statement to that effect was filed in Minnesota on January 15, 2009. Prosperan Bank later failed, and its loan to Debtor and security interest in Debtor's Acuo Tech units were assigned to Alerus Financial of Grand Forks, North Dakota ("Alerus Financial").

Home Federal amended its financing statement in South Dakota on October 30, 2008 to include Debtor's units in Acuo Tech as collateral. On December 11, 2008, Home Federal subordinated its interest in Debtor's Acuo Tech units to Crown Bank. The reason for the subordination is not known.

Hauser Holdings, LLC, which is owned by Richard Hauser, filed a financing statement in Minnesota on December 22, 2008. It identified a security interest in Debtor's Acuo Tech units. What debt, if any, Debtor owed Hauser Holdings, LLC is not clear.

Home Federal filed a financing statement in Minnesota on April 7, 2009, specifically noting Debtor's Acuo Tech units as collateral and acknowledging the subordination of its collateral interest to Crown Bank. Home Federal obtained a judgment against Debtor in Minnesota.[2]

Land Investments, LLC, a Minnesota entity owned or controlled by Richard Hauser, and Mary Jane Hauser, the wife of Richard Hauser and also an owner of

---

[2]In his amended complaint, Trustee Allred did not provide the amount of the judgment at the time it was entered.

membership units in Acuo Tech, filed a financing statement in Minnesota on January 29, 2009. The financing statement identified the collateral as a security interest in Debtor's Acuo Tech units. What debt, if any, Debtor owed Mary Jane Hauser or Land Investments, LLC is unknown to Trustee Allred.

Home Federal's judgment was filed in South Dakota on May 28, 2009. The judgment was partially satisfied.

Crown Bank brought an action against Debtor in Minnesota state court on December 8, 2009. It sought a money judgment and to replevin 6,881,072.11 of Debtor's class B units of Acuo Tech. Debtor did not respond. On February 22, 2010, the state court entered a judgment against Debtor for $745,217.23, including interest and fees, and awarded Crown Bank full possession of Debtor's interest in Acuo Tech.

Debtor defaulted on the Alerus Financial loan, and Alerus Financial brought suit against him in Minnesota state court. The state court entered an Order for Default Judgment on February 28, 2010 that directed Debtor to turn over all the collateral for the loan from Alerus Financial so it could be sold. The state court entered a judgment against Debtor for $7,438,714.91 on March 15, 2010.

As of June 15, 2010, Debtor owned 8,484,114.39 class B units of Acuo Tech; these units constituted a 28.10% ownership interest in the company. Debtor also held another 761,665.23 class B units of Acuo Tech in a separate account that was possibly a 401(k) account.

In July 2010, James Jundt caused Acuo Tech to modify its Member Control Agreement to make it more difficult for anyone but BBS Capital and Educational Trust

to obtain Debtor's units in Acuo Tech.  James Jundt and Debtor "conspired with" BBS Capital and Educational Trust to enable "them" to become the parties who controlled Debtor's interest in Acuo Tech.  BBS Capital is a hedge fund organized in Texas in 2008; its principal is Berke Bakay, who is, as noted above, one of Debtor's business associates.  Jonathan Brooks Hauser created Educational Trust in 1995 for the benefit of his children, including Richard Hauser.  Richard Hauser is, as noted above, one of Debtor's business partners and also a friend.

On July 13, 2010, Crown Bank sold 6,881,072.11 of Debtor's units in Acuo Tech to BBS Capital and Educational Trust, half to each.  The buyers paid about $.10 per unit.  BBS Capital and Educational Trust then sold 4,128,643.6 of their newly acquired units back to Acuo Tech, "which per [James] Jundt was required for Acuo [Tech's] consent[.]"  Acuo Tech paid BBS Capital and Educational Trust $215,139.90, or about $.10 per unit.

Debtor was insolvent when these transfers took place, and Educational Trust, BBS Capital, and Acuo Tech had cause to know Debtor was insolvent.  Educational Trust, BBS Capital, and Acuo Tech are insiders of Debtor.  BBS Capital and Educational Trust paid less for their Acuo Tech units than what they were worth.  The transfers were made within two years of Debtor's August 26, 2011 petition date.

Crown Bank released its security interest in Debtor's remaining interest in Acuo Tech, which was 1,603,042.28 class B units.  Home Federal held the first position security interest in these remaining units.  Home Federal assigned its judgment and security interest to POAM; the assignment was filed in Minnesota and South Dakota.

POAM assigned the Home Federal judgment to Educational Trust on June 8, 2011; the assignment was filed in Minnesota on June 11, 2011and in South Dakota on June 15, 2011.  POAM  was formed in Delaware as a limited liability company on May 31, 2011; who formed or owned the company is unknown to Trustee Allred.

On June 22, 2011, Educational Trust brought a replevin action in South Dakota. On July 14, 2011, Educational Trust gave notice to other secured creditors advising them it was going to retain the Acuo Tech units in strict foreclosure, satisfying its debt in full.  Alerus Financial objected, and Educational Trust had to continue its replevin action.  Debtor stipulated to the entry of a judgment in South Dakota allowing his Acuo Tech units to be sold at auction.  Educational Trust obtained a judgment against Debtor on August 5, 2011.  The South Dakota state court approved a sale notice that said any non interest holder in Acuo Tech that purchased the Acuo Tech units at auction would be subject to a buy-sell agreement that would force them to re-sell their units to Acuo Tech at book value.  The sheriff held a sale on August 24, 2011, and Educational Trust bought the Acuo Tech units for $1,238,615.70, the amount of Home Federal's judgment, plus post-judgment interest, or about $.77 per unit. Educational Trust was an insider, and the sheriff's sale occurred while Debtor was insolvent and for less than reasonably equivalent value.

Debtor filed his chapter 7 petition in bankruptcy on August 26, 2011.[3]  Among his secured creditors, Debtor listed "Richard J. Hauser."  Debtor stated Richard Hauser

---

[3]Trustee Allred indicated in a document that venue in the District of South Dakota for Debtor's bankruptcy case may not have been proper.  However, no party in interest timely sought a transfer of venue.

holds a fully secured claim for $975,816.00, with "Future tax losses and refunds" serving as the collateral.  Debtor also scheduled Richard Hauser as a co-debtor on the claim held by Crown Bank.

According to Debtor's schedules, Debtor still owes Home Federal $501,295.13 on one commercial loan and attendant judgment and $473,660.93 on a second commercial loan and attendant judgment.  Debtor denominated both commercial loans and attendant judgments as unsecured.  He acknowledged in the schedule that Home Federal held an Arizona judgment dated May 5, 2009 relative to each loan that had been transferred to Minnesota on May 5, 2009.

Debtor scheduled Alerus Financial as an unsecured judgment creditor with a claim of $7,427,096.09.  Though this debt was on the schedule of general unsecured claims, Debtor's entry indicated Alerus Financial's collateral for the debt was "commercial stock, business interests."  Similarly, Debtor scheduled Crown Bank as an unsecured creditor, holding one claim for $1,950,000.00 with the Kona Grill stock still serving as collateral and holding a second claim for $1,000,000.00, which was described as a commercial loan.  Debtor scheduled Prosperan Bank as an unsecured creditor of unknown amount.  Debtor described Prosperan Bank's claim with the statement "Any proceeds of [Acuo Tech] over the original lender of Crown Bank," thus again indicating this creditor held an interest in collateral.

Debtor also listed "Jim" Jundt and JoAnn Jundt as jointly holding an unsecured claim of an unknown amount.  Debtor also scheduled JoAnn Jundt as a secured creditor holding a security interest in all personal property and household goods.  On

his statement of intention, Debtor said he intends to reaffirm the debts with JoAnn Jundt that are secured by household appliances and furniture, office furniture, guns, and personal clothing.   Debtor and JoAnn Jundt have not filed a reaffirmation agreement.

In his statement of financial affairs, Debtor did not disclose any payments to creditors within 90 days of his petition.  He also stated therein:  he was not a party to any suit within one year of the petition; he did not have any property attached, garnished, or seized in a legal proceeding within one year of his petition; no property had been repossessed, sold at foreclosure, or transferred through a deed in lieu of foreclosure or returned to the seller within one year of the petition; he had not assigned any property for the benefit of creditors within 120 days; and he had not transferred any other property outside the normal course of business within two years. Debtor did not list an interest in any businesses.  Debtor also did not acknowledge the stipulation he made with Educational Trust for the entry of the judgment against him in August 2011 providing for the auction sale of the Acuo Tech units.

On September 12, 2011, Debtor amended his schedules to add Mary Ann Hauser as a secured creditor with a claim of $41,000,000.00.  He listed as collateral "[a]ll stock owed [sic?] by [Debtor] as of Jan 2009 in all companies."[4]   On September 12, 2011, Debtor also amended his statement of financial affairs to set forth several business interests.  Among them, he stated he sold all his shares in Kona

---

[4]The document is incorrectly entitled Notice and Motion to Amend Schedule D and Statement of Financial Affairs.  *See* Bankr. D.S.D. R. 1009-2 and related appendices.

Grill, Inc. in 2009; the buyer was not stated.  Debtor also stated in his amended statement of financial affairs that he pledged all his stock in Acuo Tech and five other business interests to Richard Hauser in January 2009.

Lexmark International, Inc. ("Lexmark") purchased Acuo Tech on December 31, 2012 for approximately $45,000,000.00 cash.  Acuo Tech merged into Perceptive Software in 2013, but remains a business arm of Lexmark.  Educational Trust knew a sale of Acuo Tech to Lexmark was "in prospect" in August 2011 when Educational Trust purchased the Acuo Tech units that had been pledged to Home Federal, and Educational Trust realized a "gain of at least $1.2 million" on the sale of its Acuo Tech units to Lexmark.

## II.
### *Dismissal under Fed.R.Civ.P. 12(b)(6).*

To withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6),

> "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, [678] (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)]).  The plausibility of a complaint turns on whether the facts alleged allow [the Court] to "draw the reasonable inference that the defendant is liable [as] alleged."  *Id.*

*Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010).  Moreover,

> [f]actual allegations are taken to be true at the motion-to-dismiss stage because the plaintiff has not had a full opportunity to conduct discovery and thereby uncover facts that support his or her claim.  Legal conclusions, on the other hand, will not benefit from discovery[.]"

*Ashley v. United States Dept. of Interior*, 408 F.3d 997, 1000 (8th Cir. 2005).  Most important,

> *Twombly* and *Iqbal* require a more pointed recitation of specific facts that fit together as a matter of historical occurrence and logic to establish the

elements on which to grant relief under the law invoked for suit.  This is the gist of what the Eighth Circuit says in *Braden [v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)], construing the two Supreme Court opinions.

*In re Petters Co.*, 495 B.R. 887, 898-99 (Bankr. D. Minn. 2013).

Under count one and count four, Trustee Allred alleges two constructively fraudulent transfers of Debtor's membership units in Acuo Tech occurred, and he wants to recover the value of the transferred units.  He cites 11 U.S.C. §§ 544, 548(a)(1)(B), and 550, as well as S.D.C.L. § 54-8A-5(a) and (b).  We first address the sufficiency of his allegations in these two counts under § 548(a)(1)(B).[5]

Under § 548(a)(1)(B), a trustee must establish:  (1) the debtor had an interest in property; (2) the debtor transferred, either voluntarily or involuntarily, that interest in property; (3) the transfer was within two years of the date the debtor filed his petition in bankruptcy; (4) the debtor received less than reasonably equivalent value for the transfer; and (5) the debtor was insolvent at the time of the transfer or became insolvent because of the transfer, the debtor was undercapitalized, or the debtor intended to incur or believed he would incur debts beyond his ability to pay.  *Sullivan v. Welsh* (*In re Lumbar*), 457 B.R. 748, 753 (B.A.P. 8th Cir. 2011).

In count one of his amended complaint, Trustee Allred addresses the transfer of the units in Acuo Tech to Educational Trust via the sheriff's sale in August 2011, shortly before Debtor filed bankruptcy.  The Court is satisfied Trustee Allred's amended complaint sufficiently pleads facts from which the Court can reasonably infer

---

[5]Ideally, Trustee Allred should have separated counts under § 548 from those under § 544(b) and attendant state law since the elements and statute of limitations are not necessarily identical.

Debtor was insolvent in August 2011—there are sufficient allegations of fact regarding Debtor's contemporaneous financial problems of notable magnitude and Debtor's chapter 7 filing within the month.  From Trustee Allred's factual allegations, the Court can also reasonably infer the July 2010 modification of the Member Control Agreement and the terms of Debtor's stipulated judgment with Educational Trust virtually eliminated other buyers at the sheriff's sale except Educational Trust and Educational Trust resultantly obtained the Acuo Tech units for less than a reasonably equivalent value.[6]  There is no dispute the transfer in August 2011 was within two years of Debtor's petition.

The problematic elements, when considered under Rule 12(b)(6), are determining when the actual transfer of Debtor's interest in the Acuo Tech units occurred.  In his amended complaint, Trustee Allred alleges Educational Trust received Home Federal's judgment via assignment on June 8, 2011 and then Educational Trust brought a replevin action in South Dakota on June 22, 2011.  The remaining allegations regarding the sheriff's sale are vague.  Trustee Allred says Debtor stipulated to the entry of a judgment allowing his Acuo Tech units to be sold at auction, and then the trustee separately states Educational Trust obtained a judgment against Debtor on August 5, 2011.  It is unclear whether Trustee Allred is referencing

---

[6]Whether the present record regarding the value issue can survive a summary judgment motion is a different question.  *See, e.g., Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir. 1993) ("More is required to survive a motion for summary judgment than presenting a complaint which states a claim upon which relief may be granted."); *Adelphia Commc'ns Corp. v. Bank of America, N.A.* (*In re Adelphia Commc'ns Corp.*), 330 B.R. 364, 371-72 (Bankr. S.D.N.Y. 2005) (claims that survive a motion to dismiss may not, after factual development, survive a motion for summary judgment).

the same judgment.  Further, the gravamen of the judgment or judgments is unclear.
Trustee Allred next alleges the sheriff conducted an auction on August 24, 2011.  It
is unclear when, under applicable state law and the state court's orders and
judgments, *Debtor's* interest in the units was actually transferred.  The Court cannot,
from the present allegations, reasonably infer the date of Debtor's transfer of the units
nor can it assume the sheriff's sale resulted in a transfer directly from Debtor to
Educational Trust.  Thus, the trustee's allegations in count one are not the requisite
"pointed recitation of specific facts that fit together as a matter of historical
occurrence and logic to establish the elements on which [relief is sought]," as required
by *Twombly* and *Iqbal*.  Count one must be dismissed.

In count four of his amended complaint, Trustee Allred presents the transfer of
the units in Acuo Tech via private sale from Crown Bank to Educational Trust and BBS
Capital in July 2010 as a constructively fraudulent transfer.  As with count one, the
problematic allegations are those regarding the first element of § 548(a)(1)(B):  When
did the transfer of *Debtor's* interest in these Acuo Tech units occur?  Trustee Allred's
amended complaint glosses over this essential allegation, seemingly assuming the
allegations surrounding Crown Bank's July 2010 sale of the units to Educational Trust
and BBS Capital sufficiently detail the transfer.  But those allegations indicate *Crown
Bank,* not Debtor, owned the units when Educational Trust and BBS Capital purchased
them.  Moreover, only when a transfer *by Debtor* is sufficiently alleged can the
sufficiency of Trustee Allred's remaining allegations under count four regarding a
constructively fraudulent transfer under § 548(a)(1)(B) be assessed:  Who was the
initial transferee?  Was Debtor's transfer within two years of Debtor's petition?  Was

the insolvency standard regarding Debtor met at the time of the transfer by Debtor? Was Debtor's transfer for less than reasonably equivalent value?  Accordingly, count four must be dismissed.

For the same reason, counts two and five, wherein Trustee Allred seeks avoidance of the same transfers for actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A), must be dismissed under Rule 12(b)(6).  Under count two, Trustee Allred wants the Court to avoid the transfer of Debtor's Acuo Tech units to Educational Trust via the sheriff's sale in August 2011, and under count five, Trustee Allred wants the Court to avoid the July 2010 transfer of the Acuo Tech units through Crown Bank to Educational Trust and BBS Capital.  The elements of § 548(a)(1)(A) are:

(1) within two years of the filing of the petition;

(2) the debtor transferred property;

(3) the transfer was made with actual intent[7] to hinder, delay, or defraud

---

[7]Because fraud can rarely be established by direct evidence, fraudulent intent may be inferred from the circumstances surrounding the transfer. *Brown v. Third National Bank* (*In re Sherman*), 67 F.3d 1348, 1353-54 (8th Cir. 1995)*.*  To determine whether circumstantial evidence establishes a fraudulent intent, courts consider whether any "badges of fraud" are present. *Id*.  The badges of fraud, existing under the common law or incorporated from a state's codification, include whether:

(1)   the transfer or obligation was to an insider;

(2)   the debtor retained possession or control of the property transferred after the transfer;

(3)   the transfer or obligation was disclosed or concealed;

(4)   before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5)   the transfer was of substantially all the debtor's assets;

present or future creditors.[8]

As with the counts regarding constructive fraud, Trustee Allred has not sufficiently alleged a transfer of *Debtor's* interest in the Acuo Tech units or sufficiently identified when each transfer of Debtor's interest took place.  Only if Trustee Allred can sufficiently plead a transfer *by Debtor* within two years of the petition can his remaining allegations regarding intent be considered.  Accordingly, counts two and five must be dismissed.

As to defendants' contentions that Trustee Allred's amended complaint fails to meet Rule 9(b)'s requirement that allegations of fraud be pled with particularity—and must therefore be dismissed under Rule 12(b)(6)—the Court finds some merit as to counts two and five, where avoidance of the transfers of the Acuo Tech units is

---

(6)     the debtor absconded;

(7)     the debtor removed or concealed assets;

(8)     the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9)     the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10)   the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11)   the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Sherman*, 67 F.3d at 1353-54; *see* S.D.C.L. § 54-8A-4(a)(1) (South Dakota's codification of the badges of fraud).

[8]Actual harm to the estate is not required.  *Brown v. Third National Bank* (*In re Sherman*), 67 F.3d 1348, 1355 n.6 (8th Cir. 1995).

sought based on actual fraud. *Larson Mfg. Co. of South Dakota, Inc. v. Connecticut Greenstar, Inc.*, 929 F. Supp. 2d. 924, 934-37 (D.S.D. 2013) (Fed.R.Civ.P. 9(b) applies to allegations of actual fraud, but not constructive fraud); *Petters Co.*, 495 B.R. at 916 (Fed.R.Civ.P. 9(b) applies to allegations of actual fraud, but not constructive fraud).  However, with respect to the "who, what, when, where, and how" requisites of Rule 9(b), Trustee Allred's allegations regarding actual fraud are, at times, disjointed and imprecise, though not pervadingly deficient.  These lapses under the Rule 9(b) standards, while perhaps not sufficient to warrant dismissal on their own, further support the Court's decision to dismiss counts two and five under Rule 12(b)(6). *Ritchie Capital Management, L.L.C. v. Jeffries*, 653 F.3d 755, 763-64 (8th Cir. 2011).

The insufficiency of Trustee Allred's allegations under § 548(a)(2)(A) and (B) regarding when the actual transfers of Debtor's property occurred, as discussed above, are also problematic to the extent the trustee seeks relief under 11 U.S.C. § 544 and the state law–S.D.C.L. § 54-8A-5(a) and (b)–he wants to incorporate under counts one, two, four, and five.  The elements are similar, though not identical. However, the date of each transfer to be avoided is again not clearly alleged, and the transferee from Debtor is not clearly identified.  The present amended complaint is thus insufficient for the Court to reasonably infer the relief sought is plausible, and counts one, two, four, and five must also be dismissed to the extent they seek relief under § 544 and applicable state law regarding fraudulent transfers.

BBS Capital and Perceptive Software have also moved to dismiss Trustee Allred's counts four and five under Rule 12(b)(6) because Trustee Allred failed to

identify a creditor holding a unsecured claim at the time of the alleged fraudulent transfer in July 2010, as required by § 544(b)(1) and S.D.C.L. § 54-8A-5(a) and (b), South Dakota's code provisions regarding actual and constructive fraud that are incorporated by the trustee's reliance on § 544(b)(1).  They argue Alerus Financial cannot serve as that creditor because it was, according to the trustee's amended complaint, a secured creditor in 2010.

BBS Capital and Perceptive Software argue Trustee Allred failed in counts four and five to specifically identify Alerus Financial as an unsecured creditor at the time of the subject transfer.  What Trustee Allred needed to allege under § 544(b) were sufficient facts showing a particular creditor was in fact unsecured on the petition date and this creditor was also able to utilize the identified remedy offered by state law regarding the subject transfer. *Williams v. Marlar* (*In re Marlar*), 252 B.R. 743, 753-55 (B.A.P. 8th Cir. 2000); *Carroll v. Robert F. Craig P.C.* (*In re Innovative Commc'n Corp.*), 507 B.R. 841, 846-48 (Bankr. D.V.I. 2014) (some state law avoidance provisions may be applicable only to creditors existing at the time of the transfer, while other provisions apply to both existing and subsequent creditors); *Petters Co.*, 495 B.R. at 894-901*.*  Because Trustee Allred did not clearly allege Alerus Financial was an unsecured creditor on the petition date and that Alerus Financial could have used S.D.C.L. § 54-8A-5(a) and (b) to seek avoidance of the July 2010 transfer, counts four and five must be dismissed to the extent they seek relief under § 544 and S.D.C.L. § 54-8A-5(a) or (b).

*Preferential transfer under § 547(b)*.  Under count three, Trustee Allred wants to avoid the August 2011 transfer of the Acuo Tech units to Educational Trust as

preferential, citing 11 U.S.C. § 547(b).  The trustee may avoid a pre-petition transfer under § 547(b) if he shows:

> (1) a transfer of the debtor's property was made;

> (2) the transfer was to or for the benefit of a creditor;

> (3) the transfer was on account of antecedent debt owed by the debtor;

> (4) the transfer was made while the debtor was insolvent;

> (5) the transfer allowed the creditor to receive more than it would have in a chapter 7 liquidation; and

> (6) the transfer occurred within the applicable reach back period.

*Stoebner v. San Diego Gas & Electric Co.* (*In re LGI Energy Solutions, Inc*.), 746 F.3d 350, 353 (8th Cir. 2014).  In most cases, the trustee can only avoid the transfer if it occurred on or within 90 days before the date on which the debtor filed his petition. 11 U.S.C. § 547(b)(4)(A).  If the transferee was an insider, the trustee may reach back to avoid a transfer if it occurred within one year before the date on which the debtor filed his petition in bankruptcy.  11 U.S.C. § 547(b)(4)(B).  Because Debtor is an individual, the term "insider" includes "(i) [a] relative of the debtor or of a general partner of the debtor; (ii) [a] partnership in which the debtor is a general partner; (iii) [a] general partner of the debtor; or (iv) [a] corporation of which the debtor is a director, officer, or person in control."  11 U.S.C. § 101(31)(A).  This definition, however, is not exhaustive.  11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting").  Other relationships may also give rise to insider status.

> An insider is one who has a sufficiently close relationship with the debtor that his or her conduct should be subject to closer scrutiny than those dealing at arms length with the debtor.  An insider is one who does not deal at arm's length with the debtor.  Involvement in the day-to-day

business of a debtor may elevate a creditor to insider status. However, the creditor would have to exert control over the debtor before gaining insider status. *The ability of a creditor to compel payment of a debt is insufficient control to render the creditor an insider.* In ascertaining insider status, the closeness of the relationship between the parties is also relevant.

*Stalnaker v. Gratton* (*In re Rosen Auto Leasing, Inc.*), 346 B.R. 798, 804 (B.A.P. 8th Cir. 2006) (citations omitted) (emphasis added). Whether a particular relationship gives rise to insider status is determined on a case-by-case basis. *Helena Chemical Company v. Richmond* (*In re Richmond*), 429 B.R. 263, 297 (Bankr. E.D. Ark. 2010); *In re Hillside Park Apts., L.P.*, 205 B.R. 177, 184 (Bankr. W.D. Mo. 1997).

As discussed above, the trustee's amended complaint sufficiently alleges Debtor was insolvent in August 2011. Trustee Allred's allegations regarding several defendants' insider status are also sufficient to survive dismissal under Rule 12(b)(6).[9] Accepted as true, his amended complaint contains sufficient factual matter stating a plausible claim why Educational Trust, BBS Capital, Hauser Holdings, LLC, Mary Jane Hauser, and Land Investments, LLC may be insiders whose dealings with Debtor may have been at less than arm's length. Where count three is deficient, however, is in identifying when *Debtor's* interest in the Acuo Tech units was transferred and to whom, as discussed above. Only when that transfer and the transferee are clearly identified can Trustee Allred's allegations regarding the other elements of § 547(b) be considered: who benefitted from that transfer; was the transfer on account of an antecedent debt; did the creditor receive more than it would have in a chapter 7

---

[9]Some defendants' insider status may become more relevant regarding Trustee Allred's allegations of actual fraud if other deficiencies in those counts are overcome in a subsequent amended complaint.

liquidation; and did the transfer occur within the applicable reach back period. Because of these several deficiencies, count three must be dismissed pursuant to Rule 12(b)(6).

### III.
### Dismissal under Fed.R.Civ.P. 12(b)(7).

Under Fed.R.Civ.P. 12(b)(7), the movant bears the burden of showing the missing party should have been joined under Fed.R.Civ.P. 19.[10]  *E.E.O.C. v. Apria Healthcare Group, Inc*., 222 F.R.D. 608, 609-10 (E.D. Mo. 2004).  If that showing is made, the Court then considers the four factors under Rule 19(b) and may dismiss the complaint under Rule 12(b)(7) if a necessary party cannot be joined.  *De Wit v. Firstar Corp*., 879 F. Supp. 947, 991-96 (N.D. Iowa 1995) (citations therein).  Dismissal with prejudice is ordinarily appropriate only if a plaintiff has failed to join a party after being ordered to do so.  *Id*. at 992.

In seeking a dismissal of counts four and five under Rule 12(b)(7), BBS Capital and Perceptive Software argue Crown Bank, as the initial transferee of the alleged July 2010 fraudulent conveyances, is a necessary party which can no longer be joined due to the expiration of the two-year statute of limitations under 11 U.S.C. § 546(a)(1)(A). As discussed above, Trustee Allred has not clearly pled when and to whom Debtor transferred his Acuo Tech membership units in which Crown Bank held a priority secured interest.  BBS Capital and Perceptive Software assume Crown Bank was the initial transferee when Educational Trust and BBS Capital acquired the membership

---

[10]For adversary proceedings, Fed.R.Bankr.P. 7019 incorporates most provisions of Fed.R.Civ.P. 19.

units in July 2010, but the present record is unclear regarding whether Crown Bank ever acquired actual ownership of the Acuo Tech units and, if so, when and how. Accordingly, whether Crown Bank is a necessary party cannot yet be determined, and counts four and five will not be dismissed on that basis.

IV.

Jonathan Hauser, as trustee of Educational Trust, has asked the Court to dismiss Trustee Allred's amended complaint as to the counts alleging actual and constructive fraud because the Acuo Tech units were fully encumbered at the time of the alleged fraudulent transfers and were, therefore, not "assets" the trustee could recover under South Dakota's Uniform Fraudulent Transfer Act.  That issue cannot be addressed while Trustee Allred challenges the validity of Hauser Holdings, LLC, Mary Jane Hauser, and Land Investments, LLC's secured claims.  Educational Trust also wants the Court to dismiss counts four and five because they are barred pursuant to 11 U.S.C. § 546(e) as "payments made by or to a financial institution under 11 U.S.C. § 548(a)(1)(b) and 11 U.S.C. § 544 and accompanying state law."  That is a legal issue, separate from the issues regarding the sufficiency of Trustee Allred's amended complaint.  It is, therefore, better addressed, via a motion for judgment on the pleadings or a motion for summary judgment, if Trustee Allred is able to bring another amended complaint that survives dismissal under Rule 12(b)(6).

V.

In count six, Trustee Allred incorporates the remainder of his amended complaint and states:

Pursuant to 11 U.S.C. §544(a) the Plaintiff is entitled to void any

-21-

security interest in any Acuo Unit owned by Jundt allegedly held by
Hauser Holdings, LLC, Mary Jane Hauser, and Land Investments LLC.

Hauser Holdings, LLC, Mary Jane Hauser, and Land Investments, LLC have asked the
Court to dismiss count six, arguing that in this terse count Trustee Allred "fails to
articulate a basis for lien avoidance," and that the amended complaint "is devoid of
any facts . . . for subjecting these defendants to suit." Citing S.D.C.L. § 57A-9-617,[11]
they further argue the trustee cannot avoid these defendants' secured claims because
the trustee has pled "the completion of two foreclosure sales by secured part[ies]

---

[11]Section 57A-9-617 of the South Dakota code provides:

(a) A secured party's disposition of collateral after default:

> (1) Transfers to a transferee for value all of the debtor's rights in the collateral;
>
> (2) Discharges the security interest under which the disposition is made; and
>
> (3) Discharges any subordinate security interest or other subordinate lien, other than liens created by law that are not to be discharged.

(b) A transferee that acts in good faith takes free of the rights and interests described in subsection (a), even if the secured party fails to comply with this chapter or the requirements of any judicial proceeding.

(c) If a transferee does not take free of the rights and interests described in subsection (a), the transferee takes the collateral subject to:

> (1) The debtor's rights in the collateral;
>
> (2) The security interest or agricultural lien under which the disposition is made; and
>
> (3) Any other security interest or other lien.

disposing of . . . Debtor's interest in his Acuo Units."

Both count six and the defendants' arguments against it leave the Court flummoxed.  From his general allegations in the amended complaint, the Court can only speculate Trustee Allred believes these defendants did not have a valid secured interest in the Acuo Tech units because they did not hold a valid claim against Debtor. And perhaps the defendants are arguing Trustee Allred has no lien interests to avoid under § 544(b) because the prior foreclosure actions discharged any secured interests in the Acuo Tech units these defendants may have once had.  But none of that is sufficiently apparent from the trustee's amended complaint and the defendants' motion to dismiss.  Since Trustee Allred, however, needed to first plead a plausible count under § 544(a) and because he wholly failed to do so, count six will be dismissed under Rule 12(b)(6).

VI.

Trustee Allred's amended complaint will not be dismissed with prejudice as futility is not yet apparent as to all relief sought.  *Geier v. Missouri Ethics Com'n*, 715 F.3d 674, 677 (8th Cir. 2013).  The Court will set a sixty-day deadline for Trustee Allred to file a motion for leave to again amend under Fed.R.Bankr.P. 7015 and Fed.R.Civ.P. 15(a)(2).  If a motion for leave to amend is timely filed, Trustee Allred will need to show he can cure the several ills discussed above.  *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012).

An appropriate order will be entered.

Dated: June 17, 2014.

BY THE COURT:

-23-

Charles L. Nail, Jr.
Bankruptcy Judge

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered
on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota